UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| STEVEN ENG,<br><br>        Plaintiff,<br><br>  vs.<br><br>STATE OF HAWAII, DEPT. OF PUBLIC SAFETY, KUKUI PLAZA ASSOCIATION AOAO, SHERIFF OFFICER TOMMY CAYETANO, JOHN DOES 1-10, JANE DOES 1-10, DOE ASSOCIATIONS 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10, DOE GOVERNMENTAL AGENCIES 1-10,<br><br>        Defendants. | CIV. NO. 18-00282 LEK-KJM |

**ORDER GRANTING IN PART AND DENYING IN PART
THE STATE DEFENDANTS' SUMMARY JUDGMENT MOTION**

On May 15, 2019, Defendants State of Hawai`i, Department of Public Safety ("DPS"), and Deputy Sheriff Tommy Cayetano ("Cayetano" and, collectively, "State Defendants") filed their Motion for Summary Judgment for Qualified Immunity ("Summary Judgment Motion").[1] [Dkt. no. 29.] Plaintiff Steven Eng ("Plaintiff") filed his memorandum in opposition on January 31, 2020, and the State Defendants filed their reply on February 7, 2020. [Dkt. nos. 47, 50.] The

---

[1] The title of the State Defendants' motion is misleading because the motions seeks rulings beyond the issue of qualified immunity.

Summary Judgment Motion came on for hearing on February 21, 2020.[2]  The State Defendants' Summary Judgment Motion is hereby granted in part and denied in part.  The motion is granted insofar as summary judgment is granted in favor of DPS and Cayetano, in his official capacity, as to all of Plaintiff's claims.  The Summary Judgment Motion is denied as to all claims against Cayetano, in his individual capacity.

## BACKGROUND

Plaintiff, who was proceeding pro se at the time, filed his Complaint on July 23, 2018.[3]  [Dkt. no. 1.]  The Complaint alleges the following claims: a 42 U.S.C. § 1983 claim against all defendants for violation of Plaintiff's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments ("Count I"); an assault and battery claim against all defendants ("Count II"); a claim for abuse of process, unlawful arrest, and false imprisonment against all defendants ("Count III"); a negligent training claim against DPS ("Count IV"); an

---

[2] Defendant Association of Owners of Kukui Plaza's ("Association") Motion to Dismiss Complaint Filed on July 23, 2018 ("Motion to Dismiss"), [filed 5/15/19 (dkt. no. 28),] was also heard on February 21, 2020.  The Motion to Dismiss will be addressed in a separate order.

[3] The case was referred to the pro bono panel after the filing of the Summary Judgment Motion and the Motion to Dismiss. [Order Referring Case to the Civil Pro Bono Panel, filed 5/21/19 (dkt. no. 32).]  Plaintiff's counsel was appointed on September 13, 2019.  [Dkt. no. 38.]

intentional infliction of emotional distress ("IIED") claim against all defendants ("Count V"); violation of the Hawai`i State Constitution by all defendants ("Count VI"); a negligence claim against all defendants ("Count VII"); a gross negligence claim against all defendants ("Count VIII"); a claim that all defendants intentionally inflicted physical distress upon Plaintiff ("Count IX");[4] a negligent infliction of emotional distress ("NIED") claim against all defendants ("Count X"); a loss of consortium claim against all defendants ("Count XI"); and a claim against the Association for secretly installing a motion-activated, video and/or photographic recording device in Plaintiff's home, in violation of his right to privacy ("Count XII"). Cayetano is being sued in his official and individual capacities. [Complaint at pg. 2.]

The focus of the Summary Judgment Motion is the issues of whether Cayetano is entitled to qualified immunity as to Plaintiff's § 1983 claim and whether he has a qualified/conditional privilege with respect to Plaintiff's state law claims. However, the State Defendants also argue that: 1) DPS is not subject to § 1983 liability; 2) if summary judgment is granted in favor of the State Defendants as to

---

[4] Count IX also alleges the intentional infliction of emotional distress, but that claim is already set forth in Count V.

3

Plaintiff's § 1983 claims, this Court should decline to exercise supplemental jurisdiction over the state law claims; 3) even if this Court exercises supplemental jurisdiction, Plaintiff's state law claims against DPS are barred by Eleventh Amendment sovereign immunity and under the exceptions to the State Tort Liability Act, Haw. Rev. Stat. § 662-15; and 4) Count IV is insufficiently pled.  Although the Summary Judgment Motion does not expressly extend the arguments regarding DPS to Cayetano, in his official capacity, because the analysis of the issues related to DPS and the issues related Cayetano, in his official capacity, are similar, the Court will also analyze the motion's arguments as to Cayetano, in his official capacity.

**DISCUSSION**

I.  **Statements of Fact**

The State Defendants filed a concise statement of facts, pursuant to Local Rule 56.1.  [Def. Deputy Sheriff Tommy Cayetano's Concise Statement of Material Facts ("State Defs.' CSOF"), filed 5/15/19 (dkt. no. 30).[5]]  Local Rule 56.1(e) states, in pertinent part:

---

[5] The State Defendants filed an errata to the State Defendants' CSOF ("Errata"), [filed 5/16/19 (dkt. no. 31),] to replace Cayetano's declaration that was attached to the State Defendants' CSOF and to provide an additional declaration that was not available when State Defendants' CSOF was filed.  See dkt. nos. 30-1, 30-7.

4

> Any party who opposes the motion [for summary judgment] shall file and serve with the opposing documents a separate document containing a single concise statement that **admits or disputes each fact set forth in the movant's concise statement.** The opposing party shall, if appropriate, admit in part and deny in part a fact asserted by the movant, stating specifically what is admitted and what is denied. The opposing party shall also **assert, in a separate section of its concise statement, any additional facts** the party believes the court should consider, set forth in the same manner as in the movant's concise statement . . . .

(Emphases added.) Plaintiff's Concise Statement of Material Fact ("Plaintiff's CSOF"), [filed 1/31/20 (dkt. no. 46),] does not have one section admitting or disputing each fact set forth in the State Defendants' CSOF and a separate section setting forth additional facts.

Although Plaintiff's CSOF only has one section which identifies what he believes are "the material facts for this Court's determination of the issues presented on summary judgment," [id. at pg. 2,] Plaintiff's CSOF complies with the intent and purpose of the responsive CSOF described in Local Rule 56.1(e). This Court was able to determine which facts Plaintiffs and the State Defendants agree upon, for purposes of the Summary Judgment Motion, and which facts are in dispute. This Court therefore does not deem the State Defendants' CSOF to

be admitted, in its entirety, pursuant to Local Rule 56.1(g).[6]
However, Plaintiff's counsel are instructed to comply with all
of the applicable requirements of Local Rule 56.1 in future
concise statements of fact.

## II. Relevant Facts

On July 26, 2016, Cayetano accompanied Sandra Whang, a Civil Process Server, because she needed assistance serving a court order on Plaintiff, who was an occupant of Unit 3105 of the Kukui Plaza apartment complex ("Kukui Plaza"). [State Defs.' CSOF at ¶¶ 2-3.[7]] The order referred to is the Order Granting Plaintiff's Motion for Partial Summary Judgment Against Defendants Aiko Takahashi Eng and Stanley Takahashi Eng as to Counts Two and Four of the Complaint, Filed on October 27, 2014, filed on June 6, 2016, in Ass's of Owners of Kukui Plaza v. Milton Kuo Sung Yee, et al., Civil No. 14-1-2226-10 VLC, in the

---

[6] Local Rule 56.1(g) states: "For purposes of a motion for summary judgment, material facts set forth in the movant's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party."

[7] Plaintiff states he currently resides at that unit. [Pltf.'s CSOF at ¶ 1.] Other than that portion of Plaintiff's paragraph 1, the facts set forth in paragraphs 2 and 3 of State Defs.' CSOF are not addressed in Plaintiff's CSOF. Plaintiff's brother owns Kukui Plaza unit D3105. [Pltf.'s CSOF, Decl. of Steven Eng ("Pltf. Decl.") at ¶ 2.]

State of Hawai`i First Circuit Court ("State Court Order").⁸
[State Defs.' CSOF, Exh. A (State Court Order); Errata, Decl. of
Sandra Whang ("Whang Decl.") at ¶ 2.⁹]  The State Court Order
states:

>    1.   A preliminary and permanent injunction
> shall issue commanding Defendants ENG to:
>
>         (i)  Allow [the Association] to enter
> Defendants ENG's apartment in the Kukui Plaza
> condominium project at 55 South Kukui Street,
> Honolulu, Hawaii 96813 Apartment No. D-3105
> ("Apartment") to install an annunciator in said
> Apartment;
>
>                . . . .
>
>    2.   Defendants ENG are directed to grant
> [the Association] access to their apartment at a
> reasonable date and time designated by [the
> Association], and if they fail to comply, [the
> Association] shall thereafter be authorized to
> enter the Apartment at a reasonable date and time
> to install an annunciator in said Apartment.

[State Court Order at 2-3 (emphases in original).]

Whang states that, on July 26, 2016, she was hired by
the Association - which she also refers to as "the management of
Kukui Plaza" - to serve the State Court Order "on the resident
of Apartment D3105."  [Whang Decl. at ¶ 2.]  On that date, Whang

---

⁸ The State Court Order refers to Defendants Aiko Takahashi Eng and Stanley Takahashi Eng as "Defendants Eng." [State Court Order at 2.]

⁹ The State Court Order is attached to Cayetano's original declaration, which was filed with State Defendants' CSOF, but it is authenticated in the Whang Declaration.

7

initially went to the unit only with an Association employee, who was to install the annunciator, *i.e.* a fire alarm. They knocked on the door, and they could hear movement inside, but no one answered the door. [Id. at ¶¶ 3-4.] According to Whang, Plaintiff "already was well known to Kukui [Plaza] staff as being difficult." [Id. at ¶ 4.] Whang then contacted Cayetano to assist her, and they went to the unit at approximately 10:15 a.m. [Id. at ¶¶ 5-6.]

Richard Dolor, Kukui Plaza's Security Supervisor, accompanied Cayetano and Whang on July 26, 2016. [State Defs.' CSOF, Decl. of Richard Dolor ("Dolor Decl.") at ¶¶ 1, 3.] It was Dolor's job to install the fire alarm, and he did so after Plaintiff was removed from the unit. [Dolor Decl., Exh. D (Dolor's statement, dated 7/26/16 at 2:00 p.m.).] Also present was "Javier Alomar of Operations." [Errata, Decl. of Tommy Cayetano ("Cayetano Decl.") at ¶ 5.] Alomar was a co-worker of Dolor's, and Alomar helped Cayetano handcuff Plaintiff. [Dolor Decl., Exh. D; Cayetano Decl. at ¶ 10.]

Cayetano states:

> Process Server Whang knocked on door [sic] to gain access to unit D3l05 to personally serve the Court order. There was no answer to the door, but there was someone in the apartment. As maintenance started to unlock the door, the door opened and Mr. Eng, dressed only in his underwear, opened the door.

[State Defs.' CSOF at ¶ 4 (citing Cayetano Decl. at ¶ 6; Whang Decl. at ¶ 7).[10]]  According to Cayetano:

-Cayetano "placed his foot inside the door jamb to prevent Eng from closing and relocking the door."  [Id. at ¶ 5 (citing Cayetano Decl. at ¶ 7).[11]]

-Whang told Plaintiff they were there to install the fire alarm, and she handed him the State Court Order.  She asked him if he had previously received a copy, and he said he had.  [Id. at ¶ 6 (citing Whang Decl. at ¶ 8).[12]]

-Plaintiff tried to slam the door, hitting Cayetano's foot and "instantly causing him intense pain."  [Id. at ¶ 7 (citing Cayetano Decl. at ¶ 9).[13]]

-"Cayetano first tried to calm Eng down to no avail."  [Id. at ¶ 8 (citing Cayetano Decl. at ¶ 10).]  Cayetano told

---

[10] This is consistent with Plaintiff's statements, except that he describes the sound as "a loud banging on his door." [Pltf.'s CSOF at ¶ 3 (citing Pltf. Decl. at ¶ 4).]  There is no indication that Plaintiff knew someone was attempting to open the door from the outside.

[11] This is inconsistent with Plaintiff's statement that he only "cracked open his door."  [Pltf.'s CSOF at ¶ 4 (citing Pltf. Decl. at ¶ 6).]

[12] Whang's declaration does not state she handed Plaintiff a copy of the State Court Order.  [Whang Decl. at ¶ 8.]  State Defendants' CSOF paragraph 6 is inconsistent with Plaintiff's statement that: "The group asked Eng if he had received a notice.  He told that he had not and asked if they had contacted the owner, the group did not reply."  See Pltf.'s CSOF at ¶ 6 (citing Pltf. Decl. at ¶ 7).

[13] Plaintiff's submissions do not indicate that he attempted to close the door.  He states: "Without any warning, Cayetano shoved open the door."  [Pltf.'s CSOF at ¶ 7 (citing Pltf. Decl. at ¶ 8).]  After Cayetano and Whang entered the unit, Plaintiff asked Whang to leave because he was only wearing his underwear, but Cayetano told him Whang would not do so.  [Id. at ¶ 8 (citing Pltf. Decl. at ¶ 9).]

9

Plaintiff he was under arrest for assaulting a law
 enforcement office, but Plaintiff resisted arrest. Alomar
 had to help Cayetano handcuff Plaintiff and bring him out
 into the hallway.[14] [Id.]

-Plaintiff calmed down after he was arrested and brought into
 the hallway. [Id. at ¶ 9 (citing Cayetano Decl. at ¶ 11).]

Plaintiff and Cayetano agree that Plaintiff requested his clothes, and Cayetano had Plaintiff's pants brought to him. See id. at ¶¶ 9-10; Pltf.'s CSOF at ¶ 17. However, Whang asserts that, after Plaintiff was brought into the hallway, Cayetano removed the handcuffs and allowed Plaintiff to re-enter the unit to get dressed. [Whang Decl. at ¶ 12.]

According to Cayetano, Plaintiff was "transported . . . to 240 Keawe Street for processing without further incident." [State Defs.' CSOF at ¶ 10 (citing Cayetano Decl. at ¶ 12).] Cayetano completed a contemporaneous report to DPS, as

---

[14] This is inconsistent with Plaintiff's statements of fact, which state Cayetano shoved Plaintiff from behind when Plaintiff attempted to get his phone, and then Cayetano handcuffed him. Cayetano accused Plaintiff of shoving him, which Plaintiff denies. [Pltf.'s CSOF at ¶¶ 10-12 (citing Pltf. Decl. at ¶¶ 11-13).] Plaintiff states that, when Cayetano shoved him, he fell against a dining room chair and injured his chest. [Pltf. Decl. at ¶ 11, Exh. A (photograph of Pltf.'s injuries).] While Plaintiff was handcuffed, Cayetano used the handcuffs to twist Plaintiff's arms, causing him to scream in extreme pain. Cayetano grabbed Plaintiff's neck in order to quiet him down. [Pltf.'s CSOF at ¶¶ 13-15 (citing Pltf. Decl. at ¶¶ 14-16).] Plaintiff also states Cayetano "dragged" him out of the unit, and Cayetano did not arrest him until Cayetano consulted with Whang. [Pltf.'s CSOF at ¶¶ 17-18 (citing Pltf. Decl. at ¶¶ 19-20).]

10

well as a Use of Force Report for the Sheriff's Department. [Id. at ¶ 11 (citing State Defs.' CSOF, Exhs. B & C).] Nothing in Plaintiff's CSOF contradicts either that portion of Cayetano's paragraph 10 or Cayetano's paragraph 11.

When Plaintiff returned to the unit after his booking, it was "immediately apparent that the group trashed [his] home. There was damage to several items and the kitchen and living room were a mess." [Pltf. Decl. at ¶ 21.] Plaintiff states he suffered physical injuries and severe emotional distress because of Cayetano's actions. [Pltf.'s CSOF at ¶ 20 & Pltf. Decl. at ¶ 22.] According to Plaintiff, "Cayetano's attack was sudden and completely unprovoked." [Pltf. Decl. at ¶ 22.]

### III. Qualified Immunity and Qualified/Conditional Privilege

In ruling on the State Defendants' Summary Judgment Motion, the record must be viewed in the light most favorable to Plaintiff as the non-moving party, and all inferences must be drawn in Plaintiff's favor. See S.R. Nehad v. Browder, 929 F.3d 1125, 1132 (9th Cir. 2019). So construed, there are genuine issues of fact about what transpired during the 7/26/16 Incident. These factual issues cannot be resolved without making credibility determinations, which is improper for this Court on summary judgment. See Estate of Lopez ex rel. Lopez v. Gelhaus, 871 F.3d 998, 1009 n.10 (9th Cir. 2017) ("At the summary judgment stage, '[c]redibility determinations, the

11

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" (alteration in Lopez) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986))). The factual issues are material to the determination of whether Cayetano is entitled to qualified immunity from Plaintiff's § 1983 claim, including the issue of whether Cayetano's use of force against Plaintiff during the 7/26/16 Incident was objectively reasonable. See, e.g., Kaahu v. Randall, Civil No. 14-00266 HG-RLP, 2018 WL 472996, at *6-7 (D. Hawai`i Jan. 18, 2018) (describing the analysis of whether a law enforcement officer is entitled to qualified immunity from an excessive force claim). Cayetano therefore is not entitled to summary judgment as to Plaintiff's § 1983 claim against him in Count I. See Fed. R. Civ. P. 56(a) (stating a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

Similarly, the genuine factual issues about the 7/26/16 Incident are material to the determination of whether Cayetano has a qualified/conditional privilege with respect to Plaintiff's state law claims, including the issue of whether Cayetano acted with malice or an improper purpose. See, e.g., Begley v. Cty. of Kauai, CIVIL 16-00350 LEK-KJM, 2018 WL

12

3638083, at *6 (D. Hawai`i July 31, 2018) (describing the analysis of whether a defendant who is a nonjudicial government official has a qualified or conditional privilege with respect to tort claims against him). Cayetano therefore is not entitled to summary judgment based on qualified/conditional privilege as to Plaintiff's state law claims.

**IV. A "Person" for Purposes of § 1983**

Section 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

This district court has recognized that "states and state agencies are not 'persons' subject to suit for money damages under § 1983." Lauro v. Hawai`i, CIV. NO. 19-00633 JAO-KJM, 2020 WL 608276, at *5 (D. Hawai`i Feb. 7, 2020) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 65, 71 (1989)). Thus, DPS, a state agency, is not a "person" for purposes of § 1983. The Summary Judgment Motion is therefore granted as to summary judgment in favor of DPS as to Count I.

Similarly, a state official, sued in his official capacity, is considered a "person" for purposes of a "suit under

§ 1983 only 'for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law.'" Id. (some citations omitted) (quoting Wilbur v. Locke, 423 F.3d 1101, 1111 (9th Cir. 2005), *abrogated on other grounds by* Levin v. Commerce Energy, Inc., 560 U.S. 413 (2010)). The Complaint does not allege Cayetano is committing an ongoing constitutional violation, and Plaintiff does not seek prospective declaratory or injunctive relief. See Complaint at pg. 7 (statement of the relief sought). Thus, Cayetano, in his official capacity, is not a "person" for purposes of § 1983. The Summary Judgment Motion is therefore granted as to summary judgment in favor of Cayetano, in his official capacity, as to Count I.

**V.  Jurisdiction**

Because Cayetano, in his individual capacity, is a "person" for purposes of § 1983, Plaintiff's § 1983 claim against Cayetano, in his individual capacity, remains. This Court has federal question jurisdiction over that claim. See 28 U.S.C. § 1331. Further, this Court has supplemental jurisdiction over Plaintiff's state law claims against the State Defendants because all of the claims against the State Defendants are "part of the same case or controversy." See 28 U.S.C. § 1367(a). This Court finds that there is no reason for this Court to decline to exercise supplemental jurisdiction over those claims. See § 1367(c). The Summary Judgment Motion is

therefore denied as to the State Defendant's arguments concerning supplemental jurisdiction.

**VI.   The Eleventh Amendment and the State Tort Liability Act**

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."  Aholelei v. Dep't of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted).  As previously stated, the Complaint does not seek prospective injunctive or declaratory relief; it only seeks money damages.  Thus, without a waiver of sovereign immunity by DPS and Cayetano, in his official capacity, Plaintiff's state law claims against them are barred by the Eleventh Amendment.[15]

In the State Tort Liability Act, the State of Hawai`i "waives its immunity for liability for the torts of its employees and shall be liable in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."  Haw. Rev. Stat. Ann. § 662-2.  However, Haw.

---

[15] The State Defendants do not argue Cayetano, in his individual capacity, is entitled to Eleventh Amendment sovereign immunity, nor could they.  See Alden v. Maine, 527 U.S. 706, 757 (1999) ("[A] suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally." (citations omitted)).

Rev. Stat. § 662-15 sets forth various exceptions to that waiver. Moreover, this district court has recognized that the State Tort Claims Act waiver of sovereign immunity only applies to actions brought in state court. See, e.g., Beckmann v. Ito, Civ. No. 18-00503 ACK-RT, 2020 WL 53559, at *16 (D. Hawai`i Jan. 3, 2020) (citing Sherez v. State of Hawai`i Dep't of Educ., 396 F. Supp. 2d 1138, 1144 (D. Haw. 2005); Pahk v. Hawaii, 109 F. Supp. 2d 1262, 1268 (D. Haw. 2000)).

Because there is no waiver of sovereign immunity allowing DPS and Cayetano, in his official capacity, to be sued in federal court for state law claims, summary judgment is granted in their favor as to all of Plaintiff's state law claims.

## VII. Pleading Deficiency

Finally, the State Defendants argue Count IV, Plaintiff's negligent training claim against DPS, is insufficiently pled. This portion of the Summary Judgment Motion is denied as moot because summary judgment has already been granted in favor of DPS as to Count IV based on sovereign immunity.

## CONCLUSION

On the basis of the foregoing, the State Defendants' "Motion for Summary Judgment for Qualified Immunity," filed May 15, 2019, is HEREBY GRANTED IN PART AND DENIED IN PART. The

Summary Judgment Motion is GRANTED insofar as summary judgment is granted in favor of DPS and Cayetano, in his official capacity, as to all of Plaintiff's claims against them. However, the portion of the Summary Judgment Motion asserting that Plaintiff's Count IV is insufficient pled is DENIED AS MOOT. The Summary Judgment Motion is DENIED as to all of Plaintiff's claims against Cayetano, in his individual capacity.

All parties are HEREBY ORDERED to appear before the magistrate judge for settlement conference. Plaintiff's counsel is DIRECTED to contact the magistrate judge's courtroom manager to initiate the scheduling of the settlement conference.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, February 28, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**STEVEN ENG VS. STATE OF HAWAI`I, DEPARTMENT OF PUBLIC SAFETY, ET AL; CV 18-00282 LEK-KJM; ORDER GRANTING IN PART AND DENYING IN PART THE STATE DEFENDANTS' SUMMARY JUDGMENT MOTION**